|     |                                    |                                      |
| --- | ---------------------------------- | ------------------------------------ |
|     | UNITED STATES DISTRICT COURT       |                                      |
|     | DISTRICT OF NEVADA                 |                                      |
|     | * * *                              |                                      |
|     | BRANDON M. HICKS,                  | Case No. 3:15-cv-00215-MMD-WGC       |
|     | Petitioner,                        | ORDER                                |
|     | v.                                 |                                      |
|     | RENEE BAKER, *et al.*,             |                                      |
|     | Respondents.                       |                                      |

**I.  SUMMARY**

Before the Court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") (ECF No. 2), Respondents' answer (ECF No. 37), and Petitioner's reply (ECF No. 52). Petitioner is not entitled to relief, and the Court denies the Petition.

**II.  BACKGROUND**

The Court has reviewed the record, including the transcript of the preliminary hearing in the state justice court and the transcript of the post-conviction evidentiary hearing in the state district court. (*See* Exh. 5 (ECF No. 16-5); Exh. 57 (ECF No. 17-24).) The state district court's summary of the facts and the court proceedings is accurate, and the Court reproduces it here:

> Petitioner was charged by Criminal Complaint on March 24, 2011, with one count of Kidnapping in the First Degree, two counts of Battery With Intent to Commit Sexual Assault Committed by Strangulation, and three counts of Sexual Assault, all category A felonies. The crimes occurred on October 17, 2010, and on November 26, 2010, and involved two unrelated victims. A preliminary hearing was held on April 14, 2011, at which both victims testified. Petitioner was bound over on all charges.
>
> With respect to the October 17, 2010 incident, victim A.D. told investigators that Petitioner offered to drive her home from a party. Instead of driving her

| | |
|---|---|
| 1 | home, he drove her to the Carson River and tried to kiss her. He then shoved her to the ground and placed his forearm across her throat, constricting her breathing. Petitioner then sexually assaulted A.D. Detectives interviewed Petitioner, but he denied having sex with the victim. [Exh. 47 (ECF No. 17-14 at 16-19) (Exhibit 1 to state's return to petition and supplemental petition).] DNA results later confirmed that Petitioner did in fact have sexual intercourse with the victim. [Exh. 47 (ECF No. 17-14 at 21-22) (Exhibit 2 to state's return to petition and supplemental petition).] |
| | With respect to the November 26, 2011 incident, victim S.V. told investigators that she had tried to obtain the controlled substance "ecstasy" through a drug dealer referred to her by Petitioner. The drug dealer, "Little Chris," took S.V.'s money but never provided any drugs. Petitioner told S.V. that he had a gun and instructed her to come to his house under the pretext of confronting "Little Chris" and getting her money back. While at Petitioner's house, Petitioner asked S.V. to lie down on his bed. Petitioner tried to kiss S.V. When S.V. tried to resist him, Petitioner put his hands around her throat causing her to have difficulty breathing. Petitioner then sexually assaulted S.V. [Exh. 47 (ECF No. 17-14 at 24-27) (Exhibit 3 to state's return to petition and supplemental petition).] |
| | On June 11, 2011, petitioner pled guilty to a Third Amended Criminal Information charging a single count of Sexual Assault naming both victims. All other counts were dismissed. It was further agreed that a third case of sexual assault . . . would not be filed against petitioner in exchange for his plea. On July 19, 2011, petitioner was sentenced to a term of life imprisonment with parole eligibility after 10 years. |

(Exh. 65 at 1-2 (ECF No. 18 at 2-3) (citations omitted or modified).) The sentence that Petitioner received was the only possible sentence. NRS § 200.366(2)(b). Petitioner did not appeal the judgment of conviction.

Petitioner filed a post-conviction habeas corpus petition in the state district court on April 27, 2012. (Exh. 37 (ECF No. 17-4).) The state district court appointed counsel, who filed a supplemental petition. (Exh. 46 (ECF No. 17-13).) The state district court held an evidentiary hearing. (Exh. 57 (ECF No. 17-24).) The state district court then denied the petition. (Exh. 65 (ECF No. 18).) Petitioner appealed. The Nevada Court of Appeals affirmed. (Exh. 88 (ECF No. 18-23).) The Nevada Supreme Court denied a petition for review. (Exh. 95 (ECF No. 18-30).)

Petitioner then commenced this action. As written, the Petition (ECF No. 2) contains three grounds for relief. However, grounds 1 and 2 actually contain multiple, distinct claims. Respondents have subdivided grounds 1 and 2, and the Court has adopted Respondents' subdivisions. (ECF No. 26 at 1-2.)

Respondents filed a motion to dismiss. (ECF No. 15.) The Court granted the motion in part, finding that Petitioner had not exhausted his state-court remedies for some of his claims. (ECF No. 26.) Petitioner filed a motion to stay the proceedings while he exhausted his claims in state court, and in the alternative he asked the Court to dismiss the unexhausted claims. (ECF No. 29.) The Court denied the stay, and the Court dismissed the unexhausted claims.[1] (ECF No. 35.)

Grounds 1B, 1D, 2E, 2F, 2G, and 3 are the remaining claims. The ground 1 claims are claims of trial-court error. The ground 2 claims are claims of ineffective assistance of counsel. Ground 3 is a claim that Petitioner did not enter his guilty plea knowingly and voluntarily.

### III.  LEGAL STANDARD

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). To obtain relief, a petitioner must show that "the earlier state court's decision 'was contrary to'" federal law then clearly established in the holdings of this Court, § 2254(d)(1); … or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Richter*, 562 U.S. at 100. In this context "an unreasonable application of federal law is different from an incorrect

---

[1] Reasonable jurists would not find the Court's conclusions regarding the unexhausted claims to be debatable or wrong, and the Court will not issue a certificate of appealability for them.

3

application of federal law.'" *Id.* (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citation omitted). Moreover, determining the reasonableness of a rule application necessary requires considering the rule's specificity. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* A court reviewing a habeas petition "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102. To obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. In a guilty-plea case, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

///

4

*Strickland* expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. *Id.* at 691-92; *see also Jennings v. Woodford*, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. *Strickland*, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under

5

*Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 562 U.S. at 105 (citations omitted).

## IV.　DISCUSSION

### A.　Ground 1B

Ground 1B is a claim that the sentencing judge's comments in the judgment of conviction interfered with the prerogatives of the Nevada Legislature and of the parole board. The judge stated:

> The Defendant accepts no responsibility and feels no remorse for sexually assaulting two young women. Several months ago I sentenced him on a gross misdemeanor for threatening to shoot a police officer in the head. The Defendant is dangerous. He should serve at least 20 years before he is paroled.

(Exh. 34 at 2 (ECF No. 17-1 at 3).) The Nevada Court of Appeals considered this claim in the context of effective assistance of counsel, and held:

> First, appellant claims that trial counsel was ineffective for failing to object to a statement made by the district court at sentencing, and in the judgment of conviction, that the district court wanted appellant to serve at least 20 years before being paroled. Appellant fails to demonstrate that trial counsel was deficient or that he was prejudiced. First, the district court's statements made at the sentencing hearing were not improper. Second, the district court's recommendation in the judgment of conviction that appellant serve at least 20 years before being paroled was just that, a recommendation. It is not binding on the parole board and, therefore, did not violate the separation of powers doctrine as appellant contends. Further, nothing in NRS 176.105 prohibits the district court from adding information to the judgment of conviction. Therefore, the district court did not err in denying this claim.

(Exh. 88 at 2 (ECF No. 18-23 at 3).)

Respondents correctly note that the Supreme Court of the United States has not clearly established "a substantive federal right in every citizen to have a state government that honors separation of powers principles." *Murtishaw v. Woodford*, 255 F.3d 926, 960-61 (9th Cir. 2001); *see also Hughes v. Superior Court*, 339 U.S. 460, 467 (1949). Consequently, the Nevada Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States. *Carey v. Musladin*, 549 U.S. 70, 77 (2006). To the extent that ground 1B alleges violations of state law, Respondents are correct that errors of state law are not addressable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1989); *see also* 28 U.S.C. § 2254(a). Ground 1B is without merit.

**B.     Ground 1D**

Ground 1D is a claim that the sentencing judge's reliance on suspect evidence—a substance-abuse evaluation from another case—deprived Petitioner of due process. The Nevada Court of Appeals considered this claim in the context of effective assistance of counsel, and held:

> Second, appellant claims that trial counsel was ineffective for failing to object that the district court relied on suspect evidence when sentencing appellant. Specifically, he claims that the district court relied on a report that was provided in another case that the district court had previously sentenced appellant in. Appellant fails to demonstrate that trial counsel was deficient or that he was prejudiced. The record indicates, and appellant concedes, that this report was not provided to the district court in the instant case. Further, the charge in this case, sexual assault, had a mandatory sentence of life in prison with a minimum of 10 years before eligibility for parole, which appellant received. Appellant's argument that the district court relied on this report to include the recommendation regarding parole in the judgment of conviction is mere speculation, and the district court did not err in denying this claim.

(Exh. 88 at 2-3 (ECF No. 18-23 at 3-4).)

Petitioner never provided any evidence that the state district court actually used this substance-abuse evaluation—he simply speculates that the state district must have used it. (ECF No. 2 at 4.) Additionally, as the Nevada Supreme Court noted, Petitioner received the only possible sentence for this crime. *See* NRS § 200.366(2)(b). If there was an error, then it was completely harmless. The Nevada Supreme Court's decision on this issue was reasonable, and ground 1D is without merit.

**C.     Ground 2E**

Ground 2E is a claim that counsel provided ineffective assistance because counsel did not object to, first, the judge's comments and desire that Petitioner spend at least twenty years in prison, and, second, the judge's use of the substance-abuse evaluation. The Nevada Supreme Court's decisions on these issues are quoted above. Ultimately, the

7

Nevada Supreme Court reasonably concluded that counsel did not perform deficiently and that Petitioner suffered no prejudice from any lack of objection because the state district court imposed the only sentence that it could have imposed. Petitioner has not demonstrated a reasonable likelihood that an objection would have led to a different outcome because no possible different outcome existed, and nothing counsel could have done would have changed anything. Ground 2E is without merit.

### D. Grounds 2F and 2G

Grounds 2F and 2G are related. In ground 2F, Petitioner claims that counsel provided ineffective assistance because he did not recommend an appeal based on the judge's language included in the judgment of conviction. In ground 2G, Petitioner claims that counsel's failure to file an appeal falls below the standard of care.

The analysis of whether ineffective assistance of counsel denied a defendant a direct appeal has four steps. First, has the defendant instructed counsel to file an appeal or asked not to take an appeal?

> [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . . At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.

*Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Second, if the defendant did not give instructions, has counsel consulted with the defendant about a direct appeal?

> We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

*Id.* at 478 (emphasis added). Third, if counsel did not consult with the defendant about the direct appeal, was that deficient performance by counsel?

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In

1 | making this determination, courts must take into account all the information counsel knew or should have known.

*Id.* at 480 (citation omitted). Fourth, if the lack of consultation was deficient performance, was the defendant prejudiced?

> [T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

*Id.* at 484.

On this issue, the Nevada Court of Appeals held:

> Fourth, appellant claims that trial counsel was ineffective for failing to file a direct appeal on his behalf. He claims that counsel should have appealed because of the recommendation by the district court regarding parole eligibility in the judgment of conviction. He claims that this claim had a reasonable likelihood of success on appeal. Appellant fails to demonstrate that trial counsel was deficient or that he was prejudiced. Appellant was informed of his limited right to appeal in his guilty plea agreement and trial counsel sent him a letter a few days after sentencing which explained how and when to appeal. Appellant never responded to the letter or expressed dissatisfaction regarding his sentence. Therefore, trial counsel had no duty to file a notice of appeal on appellant's behalf. . . . Further, appellant did not request information regarding an appeal and, as stated previously, this claim did not have a reasonable probability of success on appeal. Accordingly, counsel had no duty to consult with appellant about an appeal. . . . Thus, the district court did not err in denying this claim.

(Exh. 88 at 3-4 (ECF No. 18-23 at 4-5) (citations omitted).)

Petitioner did not initially instruct counsel to file a notice of appeal. Counsel did send a letter to Petitioner, as the Nevada Supreme Court noted. Counsel wrote:

> Enclosed is a copy of the judgment of conviction, which was entered on July 19, 2011. In my opinion, there are no grounds for a successful appeal because you pleaded guilty and received the sentence prescribed by law. Nevertheless, I want to inform you that you still have the right to appeal from the conviction by filing a notice of appeal in writing with the clerk of the district court within thirty (30) days after the entry of the judgment. If the notice if filed after the 30-day deadline, the appeal will be dismissed. Therefore, the notice of appeal must be filed no later than Thursday, August 18, 2011.
>
> If you wish to appeal or if you would like more information about the appeal process, please notify me at your earliest convenience. A notice of appeal will not be filed unless you request it.

(Exh. 46 (ECF No. 17-13 at 24).) At the state-court evidentiary hearing, counsel testified that he sent that letter. (Exh. 57 at 29 (ECF No. 17-24 at 30).) Counsel also testified that

if Petitioner had asked counsel to appeal, then counsel would have filed a notice of appeal, even though counsel did not think that any viable grounds for appeal existed. (*Id.* at 36-37 (ECF No. 17-24 at 37-38).) Finally, counsel testified that if he thought that viable grounds for appeal did exist, he either would have filed a notice of appeal himself, or at least told Petitioner about the viable grounds. (*Id.*)

Counsel did everything that *Flores-Ortega* requires of him, and petitioner did not respond. The Nevada Court of Appeals reasonably applied *Flores-Ortega*, and grounds 2F and 2G are without merit.

### E. Ground 3

Ground 3 is a claim that Petitioner's plea was unknowing and involuntary. A defendant's guilty plea must be entered knowingly and voluntarily, and the court record must reflect that fact. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). On this issue, the Nevada Court of Appeals held:

> Finally, appellant claimed that his plea was not knowing or voluntary. A guilty plea is presumptively valid, and a petitioner carries the burden of establishing that the plea was not entered knowingly and intelligently. . . . Further, this court will not reverse a district court's determination concerning the validity of a plea absent a clear abuse of discretion. . . . In determining the validity of a guilty plea, this court looks to the totality of the circumstances. . . .
>
> Appellant fails to demonstrate that his plea was invalid. He was thoroughly canvassed by the district court regarding the consequences of the plea. Further, he was given two opportunities to withdraw his plea prior to sentencing. The first time occurred during the change of plea hearing when appellant refused to admit his guilt. The district court would have allowed him to withdraw then but appellant indicated he wanted to continue. The second time occurred at the sentencing hearing. The district court had previously forgotten to canvass appellant regarding lifetime supervision and allowed him the opportunity to withdraw his plea. Appellant again chose to continue with sentencing. Therefore, given the totality of the circumstances, appellant fails to demonstrate that his plea was invalid, and the district court did not err in denying this claim.

(Exh. 88 at 4-5 (ECF No. 18-23 at 5-6) (citations omitted).)

Counsel testified that up until the middle of May 2011, he planned to take the case to trial. Counsel was moving to sever the charges because Petitioner had different defenses for each incident. (Exh. 57 at 21-22 (ECF No. 17-24 at 22-23).) Counsel

explained that when the prosecution offered a plea agreement, he explained to Petitioner what rights he would waive by pleading guilty. (*Id.* at 32 (ECF No. 17-24 at 33).) Counsel also explained what each of the charges meant and what potential penalties the state district court could impose. (*Id.* at 35 (ECF No. 17-24 at 36).) Finally, counsel testified that he remembered telling Petitioner that the state district judge presiding over his case had said on more than one occasion that if a defendant commits separate crimes against separate victims, as happened in Petitioner's case, then the judge would impose consecutive sentences. (*Id.* at 46 (ECF No. 17-24 at 46).)

At the change-of-plea hearing, the trial court canvassed Petitioner about the consequences of pleading guilty. (Petitioner's Exh. 5 at 3-10 (ECF No. 52 at 42-49).) When Petitioner was reluctant to admit that he had committed the crime, he was given the opportunity to withdraw his plea. (*Id.* at 10-15 (ECF No. 52 at 49-54).) In the state-court evidentiary hearing, Petitioner acknowledged that the state district court gave him the opportunity to withdraw his plea at the sentencing hearing because that court had not canvassed Petitioner about the special sentence of lifetime supervision. (Exh. 57 at 64 (ECF No. 17-24 at 65).)

Petitioner had more opportunities than most people had to withdraw his plea, but still he pleaded guilty. The Nevada Supreme Court reasonably concluded that Petitioner's plea was knowing and voluntary. Ground 3 is without merit.

## V.     CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen,* 435 F.3d at 951*;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen,* 435 F.3d at 951

11

*(quoting *Slack*, 529 U.S. at 484). To meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## VI.  CONCLUSION

It is therefore ordered that the petition for a writ of habeas corpus (ECF No. 2) is denied. The Clerk of the Court will enter judgment accordingly and close this action.

It is further ordered that a certificate of appealability will not issue.

DATED THIS 28th day of September 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE